# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | |
|---|---|
| **LEROY L. SIMIEN** | **CIVIL ACTION NO. 06-1025** |
| **VS.** | **SECTION P** |
| **WASHINGTON POLICE DEPT., ET AL.** | **JUDGE MELANÇON** |
| | **MAGISTRATE JUDGE METHVIN** |

### *REPORT AND RECOMMENDATION*

Before the court is a *pro se* civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by plaintiff Leroy L. Simien on May 10, 2006.[1]  Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Concordia Parish Correctional Facility in Ferriday but he complains about his arrest and initial incarceration by the authorities in Washington, Louisiana sometime during the month of July 2005.  He named Chief John Afford of the Washington Police Department (WPD), St. Landry Parish Jail (SLPJ) Warden Calvin Moore, unnamed deputies of the St. Landry Parish Sheriff's Office (SLPSO), and the St. Landry Emergency Medical Services (SLEMS) as defendants.  He prays that the court will "... rule on [his] case with proper respect to the law..." and " ... find out why [he] was mistreated and [his] rights were not respected ..." and, "... hold the [defendants] responsible for any wrong doing..."

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.  For the

---

[1] Plaintiff filed his complaint in the United States District Court for the Eastern District of Louisiana on or about May 10, 2006. Since venue was improper, that court transferred the complaint to this court on June 12, 2006.

2

following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. §§1915 and 1915A.

*Background*

*1. Original Complaint*

In his original complaint plaintiff claimed that on an unspecified date, he was attacked by a group of youngsters in Washington, Louisiana. He claimed that his  jaw  was fractured in three places during the affray. He further claimed that he was arrested by the WPD and detained at the SLPJ even though he was innocent.  Finally, he claimed that the SLEMS did not properly treat him at the scene; that even though he complained about mouth and head pain upon his arrival at the SLPJ, his complaints were ignored and he "... suffered many hours of unnecessary pain..." [doc. 1]

On October 17, 2006 the undersigned ordered plaintiff to amend his complaint to provide more factual detail in support of his claims. Among other things, plaintiff was directed to provide the identity of each person who violated plaintiff's rights;  to describe what each defendant did to violate his rights; to state the place and date that each event occurred; and to describe the injury he sustained as a result of the alleged violations.  Plaintiff was also directed to provide additional factual support for his claim that certain defendants acted with deliberate indifference to his serious medical needs.  Plaintiff was also directed to amend his complaint to eliminate those defendants who were not "state actors" as defined by 42 U.S.C. §1983 or juridical persons as defined by Louisiana law. [doc. 10]

On November 9, 2006, and again on December 13, 2006 plaintiff amended his complaint to provide additional support for and clarification of his civil rights claims.

3

***2. First Amended Complaint*** [doc. 11]

In the first Amended Complaint [doc. 11], plaintiff alleged that he was arrested on July 27, 2005 by Officer Dunn of the WPD.  (He claimed that he "... has been trying to get the names of the other parties involved in this incident, even contacting the SLPJ ... being unsuccessful in doing so...") He alleged that WPD conducted an investigation at the "crime scene" and collected fragments of a tail light from a vehicle which was used to assault the plaintiff. He claimed that Officer Dunn was aware of inconsistencies in the "assaulting parties statements" and believed plaintiff's version of the incident. He alleged that Dunn photographed plaintiff's injuries.   He claimed that Deputy Carl Hardy and Deputy Price of the SLPSO assisted with the investigation.

Plaintiff further claimed that Chief Offord arrived on the scene and asked plaintiff to explain why he was in the area.  He claimed that he advised Chief Offord that the events under investigation occurred on his grandparents' property.  He also claimed that he advised Offord that he was the son of Leroy Joseph and upon making this statement, Chief Offord directed Officer Dunn to place plaintiff under arrest.

According to plaintiff, after he was booked and checked out by paramedics, he was transported to SLPJ. He claimed that during this time he complained about injuries sustained in the attack and was assured by Officer Dunn and the unidentified paramedics that medical treatment would be provided at the SLPJ.

Plaintiff claimed "[i]t is still unclear to plaintiff who was actually working that particular night of the arrest at the [SLPJ]..." because he "... was in too much of pain at the time to get any further info. on the jailers..."

4

He claimed that Chief Offord should have released plaintiff based on the results of Officer Dunn's investigation. He claimed that the arrest amounted to "... defammation [sic] of the plaintiff's character once advertised in the local papers and also prejudice against the plaintiff because of the [driver's license] from the State of Texas..." He further claimed that the actions of the unnamed prison staff during the period of time beginning on the evening of July 27 to the morning of July 28, 2005 caused plaintiff to endure unnecessary pain and suffering by depriving plaintiff of medical assistance. He also claimed that this unnamed staff used "harsh threats about physical actions against the plaintiff if the plaintiff kept requesting about a nurse or hospitalization or anything toward the plaintiff medical needs or conditions."

Plaintiff further faulted the SLPJ staff because they were informed by the WPD about plaintiff's injuries and that they were aware that plaintiff had been examined by paramedics at the crime scene.  He claimed that these unnamed jailers "... should have [taken] the proper steps to ensure the health of the plaintiff or transferred the plaintiff to the proper health care environment to be treated for any medical emergencies." He also alleged that he was ultimately released on bond at noon on the day following his arrest and that evening he sought medical attention on his own from Doctors' Hospital in Opelousas. He further claimed that the charges were dismissed and expunged, although the fact of his arrest was used as evidence when plaintiff was sentenced following his October 2005 conviction on unrelated drug charges.

Plaintiff claimed that upon his release from the Doctors' Hospital he was referred "... to [the Shrouder Hospital] in Shreveport for indigent patients..." He also claimed that he sought out legal assistance but was unsuccessful.

5

Plaintiff admitted that he was found guilty of unrelated charges on October 14, 2005. This conviction, unrelated to the events complained of, resulted in his present incarceration. According to plaintiff, following the imposition of sentence, plaintiff "... complained about the removal of the braces that [were] instated [sic] at the Shrouder Hospital in Shreveport and was in urgent need of removal..." He requested medical care from the SLPJ authorities. Approximately one-month later he spoke to Warden Calvin Moore and advised him of the problem. According to plaintiff, Moore advised plaintiff that he would have to pay transportation expenses if he wanted an examination by a dentist or oral surgeon. Plaintiff claimed that he complained to Assistant Warden Sam who advised that the Warden could not charge plaintiff for transportation expenses related to medical care. Plaintiff filed a second medical care request and was then transferred to the Pine Prairie Correctional Center in Pine Prairie, Louisiana.

### 3. Second Amended Complaint

In his Second Amended Complaint filed on December 1. 2006 plaintiff alleged that his mother contacted the WPD and the SLPSO and discovered that plaintiff's arrest record did not reflect an arrest for an "aggravated" charge. Instead the record revealed that plaintiff "... was arrested, or transferred to a wake (funeral)..." Plaintiff further claimed that according to his mother's investigation, the records of the District Attorney and Clerk of Court contained no reference to the arrest. Further, according to plaintiff, his mother contacted the hospital in Opelousas and discovered that he was examined and treated by a physician there on July 4, 2005. Therefore, plaintiff concluded, his arrest must have occurred on July 3, 2005 and not July 27 as stated in the First Amended Complaint.

6

Attached to this Second Amended Complaint was an excerpt from the transcript of the sentencing on January 13, 2006 in the matter of *State of Louisiana v. Leroy Semien*, No. 02-0612-B, Twenth-Seventh Judicial District Court, St. Landry Parish, Louisiana.  According to that transcript, plaintiff had been  convicted of distribution of cocaine. In imposing sentence, the trial court noted that this conviction was plaintiff's first felony conviction, however, the court also noted, "... the defendant was arrested for the aggravated assault, as indicated by his Counsel, on July 7, 2005, where it was alleged that the defendant possessed a weapon, a gun, and he pointed it at other individuals..." [doc. 13, p. 4]

*Law and Analysis*

*1. Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact.  *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).  A civil rights complaint fails to state a claim upon which relief can be granted if  it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

7

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original complaint lacked sufficient detail and consequently, plaintiff was given an opportunity to amend his complaint to state a viable claim.  He was specifically directed to address certain specific issues. His response to the amend order provided little in the way of clarification. Nevertheless, he need not be afforded an opportunity for further amendment. His claims  are frivolous and his complaint fails to state claims for which relief may be granted. Liberally construed, plaintiff's complaints allege the following claims: (1) false arrest, false imprisonment and defamation arising out of plaintiff's arrest on either July 27, 2005 or July 3, 2005 and  (2) denial of adequate medical care by SLEMS and SLPJ on July 27 -28  or July 3 - 4,

8

2005 and, (3) an additional claim of inadequate medical care by the SLPJ during the period from

January - February, 2006.

### 2. False Arrest, False Imprisonment, and Defamation

42 U.S.C. §1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State ..., subjects, or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress. 42 U.S.C. § 1983 (2004).

Section 1983 creates no substantive rights; it merely provides for derivations of rights established

elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791

(1985).  Thus, two elements are required to state a claim for relief under § 1983: (1) that the

defendant acted under the color of law, and (2) that the defendant's actions deprived the plaintiff

of some right, privilege, or immunity secured by the Constitution or laws of the United States.

An individual has a federally protected right to be free from unlawful arrest and detention

resulting in a significant restraint of liberty. *Dennis v. Warren*, 779 F.2d 245, 247 (5th Cir.1985).

Violation of this right can be grounds for a suit under §1983 . *Id.*

The tort of false arrest or false imprisonment consists of two elements: (1) detention of

the person and (2) the unlawfulness of the detention. *Kennedy v. Sheriff of East Baton Rouge*,

2005-1418 (La. 7/10/2006),  935 So.2d 669.  A false arrest or imprisonment occurs when a

person is restrained and the restraining officer lacks either a  warrant or other statutory authority.

*Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977). "If police officers act pursuant to

statutory authority in arresting and incarcerating a citizen, they are not liable for damages for

9

false arrest and imprisonment." *Id.* (see also *Wolfe v. Wiener Enterprises, Inc.*, 648 So.2d 1295

(La.1995).  In other words, an officer who arrests someone with probable cause or a valid warrant

is not liable for false arrest simply because the innocence of the suspect is later established.

*Anderson v. Nosser*, 438 F.2d 183 (5th Cir. 1971), modified *en banc*, 456 F.2d 835 (1972), *cert.*

*denied*, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972).  The plaintiff, of course,  bears the

burden to show that the arrest or detention was made without color of legal authority. See

*Williams v. Regional Transit Authority*, 546 So.2d 150 (La.1989).

   In the original complaint, plaintiff alleged that he was attacked by a group of young men

and one young lady.  He then claimed that he was "... arrested and place[d] in the custody of

theWashington Police Dept. Even though the evidence showed my innocence I was still

detained." [doc. 1, paragraph IV]

   In his first amended complaint he alleged that the WPD, assisted by deputies of the

SLPSO conducted an investigation of the "crime scene". He claimed that Officer Dunn collected

evidence and was aware of inconsistencies in the statements given by the "assaulting parties."

Finally, he claimed that his arrest occurred under orders of Chief Offord and only after plaintiff

explained his reasons for being in the neighborhood where the disturbance occurred. He argued

that Chief Offord should have ordered plaintiff's release based upon Officer Dunn's

investigation. [doc. 11]

   Finally, in his second amended complaint plaintiff provided an excerpt of the transcript of

his sentencing on an unrelated drug charge. According to the transcript, plaintiff's own attorney

had provided evidence of plaintiff's arrest on July 7, 2005, "... where it was alleged that [he]

possessed a weapon, a gun, and he pointed it at other individuals." [doc. 13, p. 4]

10

Plaintiff has not alleged that his arrest was without probable cause.  Nor do the facts alleged by plaintiff suggest in any way that the arrest was without probable cause. The only evidence he offers in support of his claim is his conclusory claim of "innocence" and his assertion (taken as true for the purposes of this report) that the charges filed in July 2005 were ultimately dismissed and expunged. However, as shown above, even proof of plaintiff's innocence of the charges does not establish that his arrest was illegal and thus actionable as a civil rights violation. Plaintiff has nowhere alleged that his arrest was without probable cause; nor has he alleged facts which would permit such a conclusion to be drawn. In other words, he has failed to state a claim for which relief may be granted and his false arrest and imprisonment claims should be dismissed as frivolous.

Plaintiff also argues that subsequently published reports of his arrest amounted to defamation. Such allegations merely implicate plaintiff's  reputation and are insufficient to establish a cause of action under § 1983.  Damage to reputation alone, apart from some more tangible interest such as employment, does not implicate any "property" or "liberty" interest sufficient to invoke the Due Process clause of the Fourteenth Amendment. More must be involved than defamation to establish a §1983 claim under the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 701, 712, 96 S.Ct. 1155, 1160, 1166, 47 L.Ed.2d 405 (1976); see *Cook v. Houston Post*, 616 F.2d 791, 794 (5th Cir.1980).

### 3. Medical Care

Next, plaintiff complains that he was denied appropriate medical treatment by both the SLEMS and officers employed by the SLPSO.  When these complained of incidents arose, plaintiff was a pretrial detainee. The standard to apply in analyzing a denial of medical care claim

11

asserted by a pretrial detainee depends upon whether the claim is directed to a "condition of confinement" or to an "episodic act or omission." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997), quoting *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir. 1996). Plaintiff was, by his own admission,  in custody for a period of less than 24 hours, therefore it appears that his medical care claim should be analyzed as an "episodic act." Under the "episodic act" standard, "a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights." Thus, the plaintiff must show that he suffered a sufficiently serious deprivation and deliberate indifference by prison officials. *Hare*, 74 F.3d at 643 and 650.

This is the same standard applicable to convicted prisoners whose claims are analyzed under the Eighth Amendment.  In order to prevail on such claims, convicts must establish that the delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

"Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir.1997).  It occurs when a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837-840, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference in the context of the failure to provide reasonable medical care to a prisoner means that: (1) the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) they actually drew that inference; and (3) their response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant

12

risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. Plaintiff has not shown that the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn. Even if he had made a showing that the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn,  he has failed to show that these defendants actually drew such an inference and that their response to his complaints indicated that they subjectively intended that harm occur to him. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).  In addition,  whether or not the defendants  "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since  "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001).

Again, "[d]eliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th

13

Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).  The pleadings and exhibits fall far short of such a showing.

Plaintiff admits that he was examined and treated by paramedics shortly before or shortly after his arrest. He was then transported to the SLPJ where he remained in custody for a relatively short period of time. Plaintiff's allegations are insufficient to state a claim for deliberate indifference. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).   The facts alleged herein, taken as true for the purposes of this Report, do not establish that the defendants were deliberately indifferent to a serious medical need. Plaintiff's claims that he was denied appropriate medical care following his arrest are therefore frivolous and dismissal on that basis is recommended.

Plaintiff also contends that he was denied appropriate medical care following his conviction and brief incarceration in the SLPJ during the period from October - November, 2005. More precisely, plaintiff claims that braces installed as treatment for his broken jaw were supposed to be removed during the period of time following his felony conviction.  This aspect of plaintiff's medical care claim must be analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. As shown above, the medical care claims of convicted prisoners are also evaluated under the "deliberate indifference" standard.

Following plaintiff's felony conviction he was apparently sentenced to serve a hard labor sentence in the custody of the Louisiana Department of Public Safety and Corrections (LDOC). Plaintiff's pleadings imply that he remained in custody at the SLPJ for only a very short period of time pending transfer to the LDOC's custody.  He apparently made only two requests for treatment, and, following his second request, he was transferred to another facility.  Plaintiff was

14

directed to amend his original complaint to specify the nature of the injuries he sustained as a result of the alleged fault of the defendants. He has alleged no injury as a result of the defendants' failure to immediately provide for the removal of his jaw braces. Plaintiff's allegations fail to establish deliberate indifference and therefore, for the reasons given above, his second claim asserting the denial of medical care should be dismissed as frivolous. _____

_____Therefore

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on March 19, 2007.

Mildred E. Methvin
United States Magistrate Judge